MONCURL, J.
I think the Hustings court ought to have compelled the plaintiff to join in the defendant’s demurrer to the plaintiff’s evidence; which was documentary, and presented a question of law, at least not plainly against the demurrant. 1 Rob. Pr. (old ed.) 353; Green, &c. v. Buckner’s adm’r, 6 Leigh 82. But the judgment ought not to be reversed on that ground, if the evidence set forth in the demurrer shows that the plaintiff was entitled to recover. Brockenbrough v. Ward’s adm’r, 4 Rand. 352. Nor if all the evidence in the cause, which is set out in the second bill of exceptions, shows that he was entitled to recover. If upon the whole evidence the plaintiff is entitled to *896 recover, even though he might not be upon so much of it as is set out in the demurrer, it would be vain to reverse the judgment and remand the cause for a new trial which would result in precisely the same judgment. *1 will therefore proceed to consider the case upon its merits. The main if not the only question arising in the case is presented by the second bill of exceptions; and is as to the sufficiency of the notice stated in the protest of the note for two thousand dollars.
When the said note became due and was protested, Boyd the endorser was dead, and had no personal representative. He resided in Lynchburg at the time of his death, and his family continued to reside there until after the protest of the note. Notice of the dishonor of the note was, on the day of the protest, deposited by the notary in the post-office in Lynchburg, directed to “The legal representative of James M. Boyd deceased, Lynchburg;” and this is all the notice which was given.
The counsel for the defendant in error contends that no notice was necessary; or if necessary, that sufficient notice was given.
He contends that no notice was necessary, because when the note became due and was protested, there was no person in existence to receive notice, the endorser being dead and having no personal representative.
I have seen no case which expressly decides that notice is necessary under such circumstances. And there are many circumstances under which it is unnecessary to give any notice, as may be seen by referring to Story on Prom. Notes, § 356, and other elementary works. There are cases like the present, in which the notice proved to have been given in them was held to be sufficient; which strongly if not necessarily implies that some notice is necessary in such cases. But without expressing any opinion upon the question, and conceding for the purposes of this case at least that notice was necessary, I will proceed to en-quire whether the notice given was sufficient.
*The only objection taken to the sufficiency of the notice, is that it ought to have been left at the late domicil of the endorser where his family still resided, instead of being deposited in the post-office.
While, on the one hand, it has been long and well settled that if the parties (to give and receive notice) reside in different places, the notice may be sent by mail;, so, on the other, it seems to be well settled, at least as a general rule, that if they reside in the same place, the notice must be personal; that is, must be given to the individual, or left at his domicil or place of business. See 1 American Lead. Cas., 4th edition, 396 and the notes; and 2 Rob. Pr. (new ed.) 191.
But of late the courts have strongly inclined to restrict the general rule referred to, and have established many exceptions to it, as may be seen by referring to the case of the Bank of Columbia v. Lawrence, 1 Peters’ R. 578, and other cases cited in 1 American Lead. Cas. 402-3, and the notes. The learned authors of that work conclude their commentary on the cases with the following observation : “It is obvious that the. rule requiring personal notice, where the parties reside in the same place, has lost its reasonable force, and exists only by-authority. Instead of undermining it with exceptions that conflict with it in principle, and render the subject embarrassing in practice, it would be much better to declare that the rule itself has become obsolete, and is abolished.”
It cannot property be said that the rule has become obsolete, having been recognized and acted on in many recent as well as older cases, and having in no case been denied or disregarded. It is therefore too firmly established to be abolished by the courts. “Were it an original question (as is well said by Shaw, C. J., in Eagle Bank v. Hathaway, 5 Metc. R. 212, 216), it is far from certain that notice by the post-office would not frequently reach an endorser as soon and as certainty *as notice at his domicil.” But though the rule is settled by a long course of judicial decisions, “it is thus settled by positive law, only so far as the cases are within it.” Id. If this case be within it, we must follow it; but if riot, and we are untrammeled by any decisions applying to such a case, we must then determine, as an original question, whether the notice given was sufficient.
I do not think this case comes within the general rule. It cannot be said that both parties resided in the same place. The endorser was dead, and had no personal representative at the time of the protest. If there had then been a personal representative, he would have been one of the parties, and entitled to notice, which might have been given to him precisely in the same way as if he had himself been the endorser. But there being none, there was no person in existence entitled to notice; and though it might well be expected there would soon be one, yet who he would be, and when he would qualify, and where he would reside, were probably unknown to the holder.
Nor do I think we are at all trammeled by any decisions applying to such a case. It has never been decided that in such a case notice may not be given through the post-office. It is indeed said in Story on Prom. Notes, $ 310, that in such a case “notice may or should be left at the domicil of the deceased” endorser. But the cases cited as authority for that remark, only decide that notice may, not should be given in that way. The learned author seems to infer that the notice should, because it may be given in that way. But I do not think the inference is well founded. We know that under the same circumstances notice may be sufficiently given in several different ways.. As the remark of Judge Story has an important relation to this *897 case, and as the authorities bearing- upon it are not numerous, it may be proper to review them.
*In Stewart v. Eden, 2 Caines’ R. 121, the endorser at the date of the note resided in the ciiy of New York, but shortly thereafter retired to his country seat, four miles from the city, where he died nearly two months before the note became due. He had no personal representative at the time of the protest, and notice addressed to him was left at his house in the city, which was shut up at the time. It was held that the notice was well served and properly addressed. .Livingston, J., in delivering the opinion of the court, used the following observations, which have a strong bearing on the case before us : ‘ ‘ We must take care that while proper diligence be imposed on the holder of negotiable paper, we do not exact from him every possible exertion that might have been made to affect an endorser with knowledge of its being dishonored. If he has done all that a diligent and prudent man could naturally do under like circumstances; if the law has prescribed no certain way of sending a notice in the given case;” “and especially, if from what has been done, it may reasonably be presumed that notice has reached the parties concerned, we should be satisfied and not ask for more.” “Nor was it fatal to direct the notice to the endorser himself; for as it was not known whether he had made a will, nor who his executors were, until long after, it was full as probable that it would reach the parties interested by this address as by any other; some one of the deceased’s family would either open it, or see it safely delivered to an executor. ”
In the Merchants Bank v. Birch, 17 John. R. 25, when the note became due the endorser was dead without a personal representative, but the fact of his death was unknown, he having died at sea. Notice addressed to him was left at his last residence, which was in the city of New York; another was left with his reputed agent in the city, and another was sent by mail to the residence of his family in the country. It was insisted “that notice should have been given to the executors of the endorser when they qualified, though that was not until some months after the protest. It was held that Stewart v. Eden, supra, governed the case, and that the notice given was sufficient. “If an endorser be dead at the maturity of a note (says Spencer, Ch. J., in delivering the opinion of the court), and there be executors or administrators at that time known to the holder, notice must be given to them, for they represent the testator or intestate, and are as fully entitled to notice as he would be if alive. But it is a novel principle, unsupported either by precedent or authority, that notice is to be given to the representatives of the endorser, and who became such long after the note has fallen due. The rights of the holder of a note or bill, are to be determined by his acts, when the note or bill becomes due; and if he then gives such notice, as under the existing state of facts the law requires of him, his rights are fixed, and he cannot be required to superadd any other notice at a future period.”
In Willis v. Green, 5 Hill’s N. Y. R. 232, when the note became due, one of two joint endorsers was dead without a legal representative; and notice addressed to him was sent by mail to Little Balls, instead of Salisbury, where he resided at the time of his death. The court admitted that the notice would have been sufficient if it had been sent to the proper place, that is, io Salisbury; but it was unnecessary to decide the question.
In Oriental Bank v. Blake, 22 Pick. R. 206, it was held, in conformity with what was said in Merchants Bank v. Birch, supra, that where the administrator of an endorser of a note had been appointed before its maturity, and had given due notice of his apoointment, he was entitled to the same notice of the non-payment of the note as is required by law to be given to an endorser.
In Planters Bank v. White, 2 Humph. R. 112, a notice -“addressed to the endorser and sent by mail to the place of his last residence, was held to be sufficient, though he was dead and had a legal representative; the fact of his death being unknown to the notary, and the residence of the representative being at the mansion house of the deceased.
In Pillow v. Hardeman, adm’r, 3 Id. 538, the endorser was dead at the time of the protest, and the fact of his death known to the notary, but not the name of his personal representative if there then was one. A notice addressed to the “legal representative” of the endorser, as in this case, and sent by mail to the last residence of the endorser, which was at a different place from that of the protest, was held sufficient,, though it did not appear that the administrator ever received it.
These are all the cases I have seen which seem to have a bearing on the subject, and the first four are all which are cited by Story in support of his statement. They certainly do not show that the notice in this case is insufficient.
I regard the question in this case then as an open one; and so regarding it, I ask, Was not the notice given sufficient? In other words, W’as it not reasonable, under all the circumstances? For that is the question, whenever it conies up as an original one, unaffected by settled rules of law. When the note was protested, the endorser was dead without a personal representative. And the notary had at once to solve the question, How should notice be given to bind the estate of the endorser? It was necessary to give it, or at least to set it in motion, immediately. It could not be deferred until the qualification of a personal representative. Two modes of giving it naturally suggested themselves. One by-sending it through the post-office, and the *898 other by leaving- it at the last residence of the endorser, where his family *still resided in the same town; and the notary elected the former. Was it not a reasonable choice? Was it so unreasonable as to defeat the right of the holder against the estate of the endorser? No unnecessary restraint should be imposed on the circulation of negotiable paper. No difficult condition should be required to be performed to fix the liability of parties. What was the notary to do under the circumstances of this case? He could not deliver the notice to the personal representative himself, who was the person entitled to receive' it, but who was not then known and had not qualified. All he could do was, to put it in a train of being received by the personal representative in a reasonable time after his qualification. He might have left it at the last residence of the endorser, as the cases decide; but that would only have been a means of conveying it to the personal representative after his qualification. The notice is not to the family, but to the personal representative, who stands in the shoes of the endorser. Then, as a means of conveying it to the personal representative, is not the post-office at least as good a place of deposit as the last residence of the deceased? In Stewart v. Eden, the family of the endorser had removed from his last residence, which was shut up, and the notice was stuffed in a key hole; and yet it was held sufficient. A notice given personally, or at the domicil or place of business, may be merely verbal. Would not a written notice, properly addressed and -dropped in the post-office, be at least as apt to be received, and as soon received, by.the personal representative after his qualification, as any notice, much less a verbal one, left at the last residence of the endorser, even supposing some person should be there to receive it? A notice dropped in the post-office would probably be taken out by the family at once, and delivered to the representative on his qualification, or before, if he were ‘known. Or, if not taken out before his qualification, would probably be called for and received by him immediately thereafter. It is said the family would have no right to take the notice out of the office, being directed to the legal representative; that drop letters (as they are called) are not advertised; and that after three months they are sent to the dead letter office; so that the personal representative might never receive the notice. This is possible, though it is certainly very improbable. We know that, in practice, letters addressed to a deceased person, or his representative, are taken out of the post-office by members and friends of the family. But if the postmaster should be so strict as to hold the notice for the representative, it would only make the receipt of it by the proper person more certain. That person would be apt to call for it in time to prevent its being sent to the dead letter office. It is not necessary that the notice should be actually received, but only that due diligence should be used to give it.
The reason for requiring notice, in the case of a living endorser, to be left at his domicil or place of business rather than at the post-office, does not apply to the case of a deceased endorser who is without a representative. In the former case, the law presumes that the endorser is always at his domicil or place of business, or has some person there to attend to his business; and a notice left there is considered to be at home, and as having in effect been personally served. In the latter case, no such presumption can be made. A notice left at the domicil of a deceased endorser for his representative when one qualifies, is not at home, but is merely in transitu; and so is a notice left at the post-office for such representative.
If notice given through the post-office would be just as effectual as notice left at the last residence of the endorser, there is one reason at least which would make the former preferable, and which was mentioned *in the argument of the counsel for the defendant in error; and that is, the family of the deceased at the time of the protest, might be in a state of deep affliction (occasioned by his recent death), when it would be painful both to them and the notary,- for him to have to visit them on a matter of business.
I am of opinion that the notice given of the protest of the note for two thousand dollars was sufficient.
An objection is taken in the petition to the sufficiency of the notice of protest of the note for one thousand two hundred and fifty dollars; but it was not relied on in the argument, and is clearly without foundation.
And the same may be said of another objection taken in the petition, and not relied on in the argument; being to a supposed variance between the declaration and the proof. There is in fact no such variance, the cause of action being truly set out in the declaration, though it wrongly concludes, that “by reason of the premises, cause of action accrued to the plaintiffs to have and demand of said James M. Boyd, in his lifetime, said sum of money and interest, as above demanded,” instead of, his administrator since his death. But this is a mere legal conclusion, which may be rejected as surplusage. And if it were a variance, “it did not prejudice the plaintiff in error, and would have been corrected by an amendment at the trial, if the attention of the court had been called to it. ’ ’ Code, p. 672, § 7.
Upon the whole, I think the defendant in error is entitled to recover, and that there is no error in the judgment for which it ought to be reversed. I am therefore for affirming it.
DANIEL and ROBERTSON, Js., concurred in the opinion of Moncure, J.
Judgment affirmed.